MURPHY OIL CO. *v.* BURNET, COMMISSIONER
OF INTERNAL REVENUE.

No. 80.   Argued November 18, 1932.—Decided December 5, 1932.

*Messrs. Randolph E. Paul* and *Thomas R. Dempsey,* with whom *Messrs. Ferris D. Stone* and *Bradner W. Lee* were on the brief, for petitioner.

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher,* and *Messrs. Whitney North Seymour, Sewall Key,* and *J. Louis Monarch* were on the brief, for the respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

This case is here on certiorari, 286 U. S. 541, to review a judgment of the Court of Appeals for the Ninth Circuit, 55 F. (2d) 17, which reversed an order of the Board of Tax Appeals, 15 B. T. A. 1195, and sustained a ruling of the Commissioner of Internal Revenue fixing the amount of depletion to be allowed and deducted from royalties received by petitioner in 1919 and 1920 as the lessor of oil lands, in determining petitioner's taxable income for those years.

In December, 1913, petitioner, the owner of two tracts of oil lands, leased them for stipulated net bonus payments, aggregating $5,173,595.18, and royalties of one-fourth of the oil produced by the lessee. All the bonus payments were made before 1919. Whether petitioner returned those payments as income or paid income tax on

them for the years when received does not appear. During 1919 and 1920 petitioner received royalties from the leased lands. In returning its income for those years, it sought to deduct from the royalties received the entire original unit cost to it of the oil extracted during the taxable period, without any diminution by reason of the bonus payments which it had already received. Under the applicable Revenue Act of 1918, c. 18, 40 Stat. 1057, bonus and royalties received by the lessor of an oil lease, after deductions allowed by the taxing act, are taxable income of the lessor. See *Burnet* v. *Harmel, ante,* p. 103. The question to be decided is whether the Commissioner correctly calculated the deduction for depletion for the years in question, by treating the bonus previously received by the petitioner as a return of capital and by reducing *pro tanto* the depletion allowed on the royalties received in later taxable years.

The court below sustained the Commissioner's treatment of the bonus payments as advanced royalties for which depletion must be allowed under § 234 (a) (9), Revenue Act of 1918, to the extent that they represent a return of capital, and held erroneous the conclusion of the Board of Tax Appeals that the entire bonus was taxable income. The correctness of this decision must first be determined, for if the Board was right in ruling that the bonus was not subject to a depletion allowance, the method of computing the depletion to be allowed on the royalties received during the taxable years in question would present no problem. The taxpayer would be entitled to deduct the full capital investment per barrel in the oil extracted during those years.

Section 234 (a) (9) of the 1918 Act includes in the authorized deductions from gross income:

"(9) In the case of mines, oil and gas wells, . . . a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in

each case, based upon cost including cost of development not otherwise deducted: . . . such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee; . . ."

We think it no longer open to doubt that when the execution of an oil and gas lease is followed by production of oil, the bonus and royalties paid to the lessor both involve at least some return of his capital investment in oil in the ground, for which a depletion allowance must be made under § 234. See *Burnet* v. *Harmel, supra.* This is obvious where royalties alone are insufficient to return the capital investment. A distinction between royalties and bonus, which would allow a depletion deduction on the former but tax the latter in full as income, when received, making no provision for a reasonably anticipated production of oil on the leased premises, would deny the "reasonable allowance for depletion" which the statute provides. The harsh operation of such a rule with respect to taxpayers generally is apparent and is emphasized by the opportunist character of petitioner's argument here. The rule for which it contends can operate to its advantage only if it fortuitously escapes payment of any tax on the bonus payments, which it insists shall be treated as income without the deduction of any depletion allowance.

Doubts, if any, whether the statute authorizes depletion of bonus payments, have been definitely set at rest by the repeated reënactment, without substantial change, of the provisions of § 234 (a) (9),[1] since the promulgation

---

[1] § 234 (a) (9), Revenue Act of 1921, 42 Stat. 227, 256; § 234 (a) (8), Revenue Act of 1924, 43 Stat. 253, 284; § 234 (a) (8), Revenue Act of 1926, 44 Stat. 9, 42; § 23 (l), Revenue Act of 1928, 45 Stat. 791, 800; § 23 (l), Revenue Act of 1932, 47 Stat. 173, 180.

of treasury regulations providing for such depletion.[2]
See *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301,
307–8; *Brewster* v. *Gage*, 280 U. S. 327, 337; *National
Lead Co.* v. *United States*, 252 U. S. 140, 146–147.

The question remains whether the method followed
by the Commissioner in this case in allocating depletion
to bonus and royalties failed to afford that "reasonable
allowance" for depletion which the statute provides.

Article 215, Treasury Regulations 45 (1920 ed.) pro-
vided:

"(a) Where a lessor receives a bonus or other sum in
addition to royalties, such bonus or other sum shall be
regarded as a return of capital to the lessor, but only to
the extent of the capital remaining to be recovered
through depletion by the lessor at the date of the lease.
If the bonus exceeds the capital remaining to be recovered,
the excess and all the royalties thereafter received will be
income and not depletable. If the bonus is less than the
capital remaining to be recovered by the lessor through
depletion, the difference may be recovered through de-
pletion deductions based on the royalties thereafter re-
ceived. The bonus or other sum paid by the lessee for
a lease made on or after March 1, 1913, will be his value
for depletion as of date of acquisition."

This paragraph of the regulation was amended, Novem-
ber 13, 1926, by Treasury Decision 3938, V–2, C. B. 117,
to read as follows:

"(a) Where a lessor receives a bonus in addition to
royalties, there shall be allowed as a depletion deduction

[2]Art. 215 (a), Treasury Regulations 45 (1920 ed.), Revenue Act of
1918, continued intact in Art. 215(a), Treasury Regulations 62, Reve-
nue Act of 1921; Art. 216(a), Treasury Regulations 65, Revenue Act
of 1924. The amendment of subdivision (a), November 13, 1926, by
T. D. 3938, V–2 C. B. 117, appears in Art. 216(a), Treasury Regula-
tions 69, Revenue Act of 1926; Art. 236(a), Treasury Regulations 74,
Revenue Act of 1928. See also the minimum royalty provision in
Art. 236(b) of Regulations 74.

in respect of the bonus an amount equal to that proportion of the cost or value of the property on the basic date which the amount of the bonus bears to the sum of the bonus and the royalties expected to be received. Such allowance shall be deducted from the amount remaining to be recovered by the lessor through depletion, and the remainder is recoverable through depletion deductions on the basis of royalties thereafter received."

The important difference in operation between the regulation before its amendment and after, is in the case where the Commissioner properly finds that the sum of the bonus and expected royalties exceeds the lessor's capital investment in the oil in the ground. If, for example, the bonus were $1,000,000 and the estimated royalties were $2,-000,000 and the capital investment of the lessor in the oil in the ground, to be depleted, were $2,000,000, the allowed depletion for return of the capital investment would be deducted, one-third from the bonus and two-thirds from the royalties as received.

The regulation thus operates to distribute the lessor's anticipated profit or the taxable net income to be derived from the extraction of all the oil ratably between the bonus and royalties, so that the estimated profit element in each will be taxed as received, subject to such readjustments of capital account as are authorized by paragraphs (c) and (d) of the amended regulation, in the event of termination, abandonment, or expiration of the lease before all the oil is extracted. But if the bonus and expected royalties together are not found to exceed the capital investment of the lessor, the entire bonus received in advance of royalties must be treated, after the amended regulation as well as before, as a return of capital, since, in that case, the expected royalties added to the bonus are, by hypothesis, sufficient to return no more than the lessor's capital.

Such was the case here. In determining petitioner's depletion allowance for the two years in question, the Commissioner made no specific determination of the " expected royalties " from the leased lands. But such a determination was of consequence in allocating depletion to the bonus only in the event that the total of bonus and expected royalties exceeded the invested capital of the taxpayer. No facts appear which would have justified such a finding and, without it, the requirements of the amended regulation were satisfied by treating the whole bonus as a return of capital, and deducting from the depletion allowance on each barrel of the royalty oil the proportion of the capital investment already returned by the bonus. This is what the Commissioner did:

He determined, on the basis of engineers' reports, the total amount of oil in the ground at the date of the lease and its value as of March 1, 1913. This he treated as petitioner's capital investment, to be returned by the depletion allowance. The computation necessarily revealed the per barrel capital investment in oil in the ground at the date of the lease. By making certain necessary capital investment adjustments, reflecting oil extraction during the years before 1919, the detail of which is not now important, he arrived at the per barrel capital investment of petitioner in oil in the ground in 1919 and 1920, the figure which would represent the actual amount of depletion of the capital investment for each barrel of oil extracted during those years, if there had been no bonus payments. His method of bringing the bonus into the computation amounted, in effect, to dividing the amount of the bonus by the total number of barrels of royalty oil in the ground, as indicated by the engineers' reports. The result represented the amount to be deducted from the depletion allowance per barrel of royalty oil which would otherwise have been made for those years. Stated

in another way, the total amount of the bonus was deducted from petitioner's total capital investment in oil in the ground returnable by depletion allowances, with a corresponding reduction in the per barrel capital investment in the oil reserve. Thus the Commissioner treated the whole of the bonus as a return, in advance of abstraction of the oil, of a part of the petitioner's capital investment in the oil in the ground, with which it would part, in a technical legal sense, only upon abstraction. In consequence, the deduction for depletion allowed on royalties received in 1919 and 1920 was reduced; it is of this reduction that petitioner complains.

We think the Commissioner's method " reasonable " within the meaning of the statute. The deduction for depletion from the bonus payments, which the statute requires, must either be made after the process of extracting the oil is complete, to the extent that the royalties received have been insufficient to replace invested capital, with the attendant inconvenience of indefinite postponement of the allocation of the bonus to income and return of capital, or a formula must be adopted by which the appropriate allocation may be made as the two classes of gross income, bonus and royalties, are received.

That formula the regulation purports to furnish. Where the estimates are reasonable, the formula affords a fair and convenient method of avoiding the present taxation of the bonus, when received, as income, in the face of the probability that it will ultimately prove not to be such. It will not fail to provide, with reasonable certainty, for the restoration of capital to which the taxpayer is entitled, if the oil extracted equals or exceeds the amount originally estimated. If less than that amount, it does not preclude revision and necessary adjustments, as errors appear probable. In addition, provision is made by subdivisions (c) and (d) of the regulation, as amended, for such necessary capital readjustments as may be occa-

sioned by the termination, abandonment or expiration of the lease before all the oil is extracted.

The method of computation provided by the amended regulation must be taken to have received the approval of Congress, for, as already noted, the provisions of article 215 (a), as amended, have been continued in the Treasury Regulations since 1926 and those of § 234 (a) (9) of the Revenue Act of 1918 have been reënacted without substantial change in the Revenue Acts of 1928 and 1932.

The problem here is different from that involved in *Burnet* v. *Thompson Oil & Gas Co., supra.* There it was held, interpreting § 234 (a) (9), that the part of the depletion not allowed by the 1913 statute in the year in which it occurred could not be carried over and added to the depletable base used in computing the tax for a later year under the 1918 Act, which allowed depletion in full. Here an anticipated depletion of capital is to be returned from bonus and future royalties, to the extent that the applicable statutes allow, and the problem is to allocate such anticipated depletion to a payment made in advance of its occurrence. This allocation is permitted by the statute.

Petitioner argues, nevertheless, that the regulation is unreasonable because it requires the Commissioner to estimate probable royalties which are dependent on the frequently unforeseeable future market value of oil. But the regulation does not require him to make estimates which are unreasonable, for where none can be made with reasonable accuracy the Commissioner cannot find that "the sum of the bonus and royalties expected to be received" exceeds the capital investment. In that event, the whole of the bonus will be treated, as in this case, as a return of capital. We cannot say that such a result is unreasonable on its face. The exigencies which "the peculiar conditions of each case" may present, we need not now consider. It is also unnecessary to inquire under

what circumstances the application of the regulation may fail to comply with the statute because the appraisals which are made are extravagant or impossible. In the case before us the accuracy of every estimate of the Commissioner is unchallenged. It cannot be said that the regulation, as applied here, was unauthorized by the statute because inadequate for its purpose or inconvenient or unjust in its operation.

Finally, petitioner urges that as the Commissioner failed to find the expected royalties to be received under the lease, the court below should have exercised its discretion to remand the case to the Board of Tax Appeals for a rehearing. § 1003 (b), Revenue Act of 1926, 44 Stat. 9, 110. As we have said above, the record does not disclose any facts from which the expected royalties might be determined. Neither the petitioner nor the Commissioner asked opportunity to supply such facts. It does not appear whether such an estimate could be made, or that, if made, the sum of the bonus and expected royalties would exceed the petitioner's capital investment, returnable by depletion. Hence, no case was made calling for the court below to exercise its discretion in petitioner's favor.

*Affirmed.*