James D. Simms, of Tulsa, Okl. (John Enrietto, of Washington, D. C., on the brief), for petitioners.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

## FINK et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 1143.

Circuit Court of Appeals, Tenth Circuit.

March 26, 1935.

BRATTON, Circuit Judge.

This proceeding involves the income tax liability of Lucinda Pitman, a full-blood Creek Indian, for the year 1922. The facts were stated in detail on a former appeal and need not be repeated here. 64 F.(2d) 740. It was there held that the taxpayer inherited the entire estate to the allotment of her deceased son; that the homestead was exempt from taxation; and that the income derived from initial bonus or royalties from the leases covering the surplus land was subject to tax, not as capital gain, but as ordinary income with appropriate deductions for proper depletion allowances. Upon remand each party submitted a recomputation of the tax due. The Board sustained the recomputation of the Commissioner, holding that the tax liability was $6,977.89. The cause came here to review that action. Lucinda Pitman died pending review, and the executors of her estate were substituted as parties.

The first question to which our attention is directed concerns the depletion allowance made in respect to the bonus received from leases covering the surplus land. The son through whom the allotment was inherited died October 14, 1919; therefore, that is the date on which Lucinda Pitman acquired the property. An appraisement filed in the probate court fixed the then reasonable value of the entire allotment at $159,120.35, and that included the surplus land at $94,256.28. The Board found that the fair market value of the surplus land at the time of its acquisition was $94,256.28, and in making the recomputation the Commissioner used that figure as the capital investment. Petitioners complain; they say it is too low, and urge that in reaching it the appraiser made certain deductions for anticipated factors which did not mature, namely, interruption of operation at the expiration of the old leases and cost of rehabilitation. Lucinda Pitman offered the appraisement in evidence for the declared purpose of showing the status of the property and its value at the time of acquisition. Since she tendered the evidence for that purpose, petitioners are bound by it and cannot now question its correctness. The Commissioner then determined that the expected royalties were $21,977.55, and that action is not challenged. The cash bonus was $111,000. The two aggregate $132,977.55, and the bonus represents 83.4727 per cent. of that total. The Commissioner applied that per cent. to the bonus for depletion, resulting in $78,678.26. It is that process of apportionment which is drawn in question, petitioners asserting that the entire bonus represents returned capital and should be so treated.

Section 214 (a) (10) Revenue Act of 1921 (42 Stat. 239) provides that in computing net income there shall be allowed as a deduction: "In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted. * * * In the case of leases the deductions * * * shall be equitably apportioned between the lessor and lessee;"

Article 215, Treasury Regulation 62, as amended (T. D. 3938, V-2) reads: "Where a lessor receives a bonus in addition to royalties, there shall be allowed as a depletion deduction in respect of the bonus an amount equal to that proportion of the cost or value of the property on the basic date which the amount of the bonus bears to the sum of the bonus and the royalties expected to be received. Such allowance shall be deducted from the amount remaining to be recovered by the lessor through depletion, and the remainder is recoverable through depletion deductions on the basis of royalties thereafter received."

The cash bonus and expected royalties exceed the fair market value of the oil rights at the date on which title vested in the taxpayer. We think the Commissioner was correct in apportioning to depletion that part of the bonus which bears the same ratio to the base value of the property as the bonus bears to the sum of the bonus and estimated royalties, thus distributing the profit ratably between bonus and royalties. That is the method fixed by the regulation, and it was expressly approved in Murphy Oil Co. v. Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. 318. But petitioners argue that the method there sustained no longer obtains; that it was modified in Palmer v. Bender, 287 U. S. 551, 53 S. Ct. 225, 77 L. Ed. 489, decided about a month later; that it was held in that case that cash bonus for an oil lease is a return pro tanto of the capital investment in the oil in advance of its extraction and effects a corresponding reduction in the unit depletion allowance upon the royalty oil as it is produced. The court dealt there with the quality of interest which will support depletion, and held that the statute authorizing the deductions applies to any taxpayer who has acquired by investment an interest in the oil in place and obtains income from the extraction of oil from which his capital investment must be returned, regardless of descriptive terminology of that interest found in the local law of the state. That was the dominant question presented and decided, and the opinion fails to indicate an intention to modify the earlier case. Instead, the court cited it with apparent approval, and like reference was made to it in Herring v. Commissioner, 293 U. S. 322, 55 S. Ct. 179, 79 L. Ed. ——. Manifestly the Murphy Case, expressly sustaining the method of apportionment applied here, has not been modified and governs.

The remaining grievance is the refusal to include in the capital investment to be returned as depletion a part of the $30,000 paid to Robert L. Pitman, Sr. No part of that expenditure could be included for

two separate reasons: First, the fair market value of the oil rights was the base used, not cost. When market value is the base figure, an expenditure made in settlement of a controversy concerning the title cannot be added. To pyramid one on the other would result in a duplication of values. Next, even if cost were used as the capital investment, the dispute between Lucinda Pitman and Robert Pitman, Sr., was not confined to the land constituting the allotment. It included other property belonging to their deceased son. The payment of $30,000 was made in adjustment of the entire disagreement. The Board did not find what part of the sum should be apportioned to the settlement in respect to the allotted land. Neither the taxpayer nor the Commissioner sought to supply evidence upon which to make such an apportionment. In the absence of evidence, no part of the amount could be included in the capital investment and thus increase the allowance for depletion. Blackwell Oil & Gas Co. v. Commissioner (C. C. A.) 60 F.(2d) 257.

For the reasons indicated, the order of the Board is affirmed.