## AMTORG TRADING CORPORATION v. UNITED STATES.

District Court, S. D. New York.

May 18, 1938.

716

David Drucker, of New York City, for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (Robert E. Pratt, of New York City, of counsel), for defendant.

HULBERT, District Judge.

The plaintiff, a New York Corporation, sues under the Tucker Act (Title 28 U.S. C.A. § 41) to recover taxes claimed to have been illegally assessed, levied and collected pursuant to the Revenue Act of 1926, 44 Stat. 9.

There is no right of trial to a jury.

The case was submitted on an agreed state of facts, supplemented by the testimony of one Joseph Finkelberg, Traffic Manager of the plaintiff which has its principal place of business in New York City and imports from and exports to Russia where it also maintains a branch and bank account at Moscow.

Between 1932 and 1936 shipments of cargoes were made from Leningrad and Odessa consigned to the plaintiff at various American ports. These shipments were of two classes, bulk cargoes carried by vessels not of American registry and miscellaneous cargoes shipped by German and United States Lines until 1934, and thereafter chiefly by vessels of Russian registry.

All Marine coverage was made at Moscow with the Russian State Insurance Department (called Gostrach) of the Soviet Government. Premiums aggregating $207,-322.05 were paid to Gostrach out of the plaintiff's funds from its account in the Moscow bank and the policies of insurance were delivered to and retained by the plaintiff in its Moscow office.

The insurance was effected from the time and place of shipment until arrival and discharge at destination. The plaintiff also had a contract of insurance with The Springfield Fire & Marine Insurance Company (Mass.) whose liability attached when cargo was discharged in the United States.

Gostrach has never been authorized to do business in the United States and has no officer or agent therein authorized to sign or countersign policies or other instruments.

In July 1936, the Commissioner of Internal Revenue, purporting to act under the provisions of Title 8, Schedule A, Paragraph 7, of the Revenue Act of 1926, 26 U.S.C.A. § 904, assessed against the plaintiff $6,219.66 as a stamp tax of three cents on each dollar of insurance premiums paid upon such shipments, and on September 17, 1936, caused to be delivered to the plaintiff a notice of such assessment and demand for payment thereof stating that if the tax were not paid within in ten days a penalty of five percent (5%) of the amount of the assessment would be imposed, plus interest at the rate of one percent (1%) per month until paid.

In compliance with such notice and demand, and because of the claimed liability of a penalty and interest and to avoid the imposition thereof, plaintiff on September 28, 1936 paid the tax, as assessed,

to the Collector of Internal Revenue, and on the same day filed with him its claim for refund thereof, which claim was rejected on January 11, 1937 by the Commissioner of Internal Revenue.

The pertinent provisions of the statute in question read as follows:

"[7] On each policy of insurance * * * whereby insurance is made or renewed upon property within the United States * * * against peril by sea * * * issued * * * in the name of a domestic corporation * * * resident of the United States by any foreign corporation * * * not a resident of the United States, when such policy * * * is not signed or countersigned by an officer or agent of the insurer in a State, Territory, or District of the United States within which such insurer is authorized to do business, a tax of three cents on each dollar, or fractional part thereof of the premium charged: Provided, That policies of reinsurance shall be exempt from the tax imposed by this subdivision [section]."

"Any person to or for whom · or in whose name any such policy or other instrument is issued, or any solicitor or broker acting for or on behalf of such person in the procurement of any such policy or other instrument, shall affix the proper stamps to such policy or other instrument, and for failure to affix such stamps with intent to evade the tax shall, in addition to other penalties provided therefor, pay a fine of double the amount of the tax."

No policies of re-insurance are involved.

Plaintiff contends that the taxing statute does not apply because the transactions with respect to which the insurance was made took place in the Union of Soviet Socialist Republics, were wholly foreign, the property was not physically within the United States, and that in any event the power to tax would be upon the sole theory that "within the United States" includes "three miles beyond the shore line" and would require an apportionment of the premium allocable to the risk under the policies after the property insured came within such three miles.

The provision of the statute as quoted above was enacted in identical language in the Revenue Act of 1918 (Title 11, Schedule A, Par. 15, 40 Stat. 1138) and re-enacted in 1921 (Title 11, Schedule A, Par. 13, 42 Stat. 306) and again in 1924 (Title 8, Schedule A, Par. 12, 43 Stat. 336) but counsel agree there is no record of any previous litigation involving the question at issue. The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury adopted Regulations (relating to Revenue Act of 1926) Article 70 of Regulations 71, reading as follows:

"Art. 70. *Insurance on commodities exported;* (a) No tax is imposed upon the premium charged for insurance issued to cover commodities which are in the actual process of exportation and which have begun their voyage or preparation for the voyage from the United States.

"(b) If a policy or other instrument is issued covering both export and nonexport property, the tax will be computed upon the full amount of the premium charged, unless such instrument clearly indicates the property for export and the premium charged for the insurance thereon."

This Article was previously in effect as Article 165 of Regulations 55 (relating to Revenue Act of 1918) and as Article 145 of Regulations 55 (relating to Revenue Act of 1921) and appears to have continued in effect until Article 70, above quoted, became effective.

The Commissioner also adopted and promulgated Article 71 of Regulations 71, reading as follows:

"Art. 71. *Movable property.* Movable property, such as rolling stock of railroads, ships, vessels, barges, and other similar movable property, shall be held to be property within the United States if the principal place of business of the corporation or partnership owning and controlling the same is located within the United States, or in the case of an individual, if he resides in the United States, unless such property is permanently located without the United States for the purpose of ordinary use. The nation of registry of a vessel shall have no bearing upon the location of the property in the same."

█ There was an implied legislative recognition and approval of the construction of the statute. National Lead Co. v. U. S., 252 U.S. 140, 146, 40 S.Ct. 237, 239, 64 L.Ed. 496; Murphy Oil Co. v. Burnet, 287 U.S. 299, 302, 53 S.Ct. 161, 162, 77 L. Ed. 318, and other cases.

In Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361,

the Court said at page 464, 54 S.Ct. page 808:

"But the expounding of a statutory provision strictly according to the letter without regard to other parts of the act and legislative history would often defeat the object intended to be accomplished. Speaking through Chief Justice Taney in Brown v. Duchesne, 19 How. 183, page 194, 15 L.Ed. 595, this court said: 'It is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature, as thus ascertained, according to its true intent and meaning.' Quite recently in Takao Ozawa v. United States, 260 U.S. 178, page 194, 43 S.Ct. 65, 67 L.Ed. 199, we said: 'It is the duty of this court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail.' "

■ Primarily the Internal Revenue Act was designed for the production of revenue, and it is also conceivable that the Congress intended that certain provisions should have a regulatory effect as an incident thereto.

In the Report of the Senate Finance Committee on the Revenue Act of 1918 (Report No. 617, dated December 6, 1918) we find at page 18:

"No changes of importance were made in this title except that a provision was made for a special tax of five cents on each dollar of premium charged under each policy of insurance or its equivalent issued to or for a domestic corporation, partnership, or individual by any foreign corporation, partnership or individual when such policy or instrument is not signed or countersigned by an officer or agent of the insurer in a State, Territory, or District of the United States in which

the insurer is authorized to do business (Sec. 1107 (15), p. 241)". (The bill as enacted provided for a three cent rate.)

The Congress again expressed itself on the question of the application of the statute when the report on the Revenue Act of 1926 was filed, as follows:

"The stamp tax on policies of insurance carried in the bill amounts to 3 cents on each dollar of the premium charged upon any policy which is not signed or countersigned by an officer or agent of the insurer within the United States. The tax was never designed for revenue purposes. The revenue from this tax is negligible. The tax applies only to the premium on policies of insurance which are not written by agents or officers in this country. * * * This law interferes with international commerce in a discriminating manner which is not applied to any other international commercial contract. * * *" (From the Minority Views of the Senate Finance Committee on January 16, 1926.)

■ There is no reference to the phrase which it is claimed requires that premiums paid on foreign policies are taxable only on property physically "within the United States," but in view of the recognition which Congress has given to the interpretation of the Act by the Commissioner in Article 70 of the Regulations regarding exports, it seems logical to apply a converse interpretation with respect to imports, particularly in the light of the language of Article 71.

It is also significant that since the minority party in Congress gained majority representation no change was made in the language of the provision of the statute under consideration.

"A thing may be within the letter of a statute, and not within its meaning; and it may be within the meaning, though not within the letter." United States v. Moore, 95 U.S. 760, 763, 24 L.Ed. 588.

■ Manifestly the tax is not one levied against the insurer but is in the nature of a persuasive invitation to foreign insurance companies to apply and obtain authority to do business in the United States and thus become amenable to our laws, including taxing statutes, and also afford protection to the insurer by enabling him to obtain jurisdiction in our own courts to enforce his rights under the policy.

The Commissioner of Internal Revenue determined that upon exports from the

United States the authority was given to effect insurance at destination, or at least with foreign corporations not authorized to do business in the United States, free of tax, while on the other hand upon imports to the United States, since a tax could not be levied upon and collected from a foreign corporation not authorized to do business in the United States, the equivalent could and would be assessed upon and paid by the American importer when the policy was *issued* to such importer and that practice has been followed by the Commissioner of Internal Revenue for twenty years, apparently without challenge until the instant case.

■ The Revenue Act (Title 26 U.S.C.A. § 143) with respect to withholding of tax at source is somewhat analogous in principle and supports the action of the Commissioner which, when a statute is ambiguous or doubtful, is entitled to great weight.

■ It is the conclusion of the Court that the tax was properly assessed, levied and collected.

The bill of complaint must be dismissed.