CHARLES PETTIT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BERTIE PETTIT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 94292, 94293, 94799, 94800. Promulgated February 6, 1940.

*W. B. Harrell, Esq., Russell Allen, Esq.,* and *Albert G. Moss, C. P. A.,* for the petitioners.

*James H. Yeatman, Esq., M. L. R. Wade, Esq.,* and *James L. Backstrom, Esq.,* for the respondent.

270

OPINION.

BLACK: The material provisions of section 117 of the Revenue Acts of 1934 and 1936 are identical and are set out in the margin.[1] Petitioners contend that the rights and estates held by them by virtue of the 31 oil payment contracts are "capital assets" as that term is defined in section 117 (b) ; that the profits resulting from the sales of oil in connection with these contracts should be taken into account in computing net income at the percentages mentioned in section 117 (a), depending upon the length of time the contracts have been held; and that in computing the profits resulting from the sales of oil, petitioners are entitled to have the gross proceeds received by them reduced by cost or percentage depletion, whichever is greater. The respondent, in determining the deficiencies, has reduced the gross proceeds received by petitioners by cost or percentage depletion, whichever is greater. He contends that petitioners have not sold or exchanged capital assets and are not, therefore, entitled to the benefits of section 117, and that his determinations of

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

100 per centum if the capital asset has been held for not more than 1 year;

80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years;

60 per centum if the capital asset has been held for more than 2 years but not for more than 5 years;

40 percentum if the capital asset has been held for more than 5 years but not for more than 10 years;

30 per centum if the capital asset has been held for more than 10 years.

(b) DEFINITION OF CAPITAL ASSETS.—For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

the deficiencies are correct. He further contends as an alternative, that if the Board should hold that petitioners are entitled to the benefits of section 117, then the gross proceeds received should only be reduced by a proportionate part of the cost of the contracts, and that the deductions for depletion which he has allowed should be disallowed. The parties are in agreement as to the amount of taxable net income from the sales of oil in connection with the 31 oil payment contracts for each of the taxable years involved under either the petitioners' contention or the respondent's alternative contention, which taxable net income, compared with the respondent's determination, is as follows:

| Year | Respondent's determination | Petitioners' contention | Respondent's alternative |
|------|---------------------------|-------------------------|--------------------------|
| 1934 | $108,264.24 | $69,778.06 | $80,883.79 |
| 1935 | 68,394.48 | 42,998.92 | 51,547.89 |
| 1936 | 75,441.41 | 44,349.58 | 52,766.57 |

The term "capital assets" is defined by section 117(b) to mean "property held by the taxpayer" exclusive of three classifications of property, namely, (1) stock in trade, (2) property of a kind which would properly be included in the inventory, and (3) property held primarily for sale to customers in the ordinary course of the taxpayer's trade or business. The respondent does not seriously contend that the "property held by the taxpayer" falls within any of the three classifications specifically excluded, and, under the view which we take, it will not become necessary to decide whether the "property held by the taxpayer" does or does not fall within any of the three classifications specifically excluded from the term capital assets. The respondent contends that the "property held by the taxpayer" consisted of the 31 oil payment contracts, vesting in petitioners an economic interest in a certain amount of oil in the ground, and that no part of this property, as such, was either sold or exchanged by petitioners during the taxable years in question. If any "property" were sold, the property sold was the oil itself, rather than the economic interest in the oil, and although some of the oil was run into storage tanks prior to its sale, it is not petitioners' contention that any of the oil sold had been held in the storage tanks for more than one year prior to its sale. But as will be explained later in this opinion, we think the proceeds received by petitioners should be classed as "income  *  *  *  growing out of the ownership or use of or interest in  *  *  *  property" rather than "gains" from the sales of property. (Words within quotation marks are taken from section 22(a), Revenue Acts of 1934 and 1936.)

The respondent says in his brief, "If petitioners had sold their contracts outright, we would then agree that they were entitled to the benefit of the capital gain provisions * * *." Such a situation would be controlled by *Anderson* v. *Commissioner*, 81 Fed. (2d) 457, reversing 30 B. T. A. 597. But petitioners did not sell their economic interests in the oil in place. They retained those interests, diminished, of course, from time to time by depletion, and merely enjoyed the income which those interests produced. This, we think, is the deciding factor in the case. We do not think there is any difference in substance between the proceeds which petitioners received by virtue of their ownership of the several economic interests, and the bonus payments which Harmel received in *Burnet* v. *Harmel*, 287 U. S. 103. In that case Harmel was the owner in fee of Texas oil lands. He executed oil and gas leases of the lands for a stated period in return for bonus payments, aggregating $57,000 in cash, and stipulated royalties, measured by the production of oil and gas by the lessee. The question there was whether under the Revenue Act of 1924, the bonus payments of $57,000 were "gain from the sale or exchange of capital assets." The Supreme Court was of the opinion that the payments (both bonus and royalties) by the lessee to the lessor were not a conversion of capital, as upon a sale of capital assets, but were income to the lessor, like payments of rent. It did not think that the treatment of the payments as income produced the kind of hardship aimed at by the capital gains provision of the taxing act, as the abstraction of the oil from the soil was a time-consuming operation and the payments made to the lessor did not normally become payable as the result of a single transaction within the taxable year, as in the case of a sale of property. It said that the statute speaks of a "sale" and that the leases there in question would not generally be described as a "sale" of the mineral content of the soil, using the term in its technical sense or as it is commonly understood. Finally, the Supreme Court noted that the court below thought that the bonus payments, as distinguished from the royalties, should be treated as capital gain, apparently because it assumed that the statute authorized a depletion allowance upon the royalties alone, an assumption which later proved to be incorrect. Cf. *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299. It said it could see no basis for such a distinction, and that:

Bonus and royalties are both consideration for the lease, and are income of the lessor. We cannot say that such payments by the lessee to the lessor, to be retained by him regardless of the production of any oil or gas, are any more to be taxed as capital gains than royalties which are measured by the actual production.

Although the *Harmel* case was decided under the Revenue Act of 1924, there are no provisions in the Revenue Acts of 1934 and 1936

which would require any different holding on the same set of facts as were there involved. In the instant proceedings, the proceeds received and to be received by petitioners are as much of a time-consuming operation as was the receipt of income by Harmel from his leases. Pettit testified that it would take from three to thirty years to realize all that he hoped to realize from his contracts. Furthermore, there can be no question as to petitioners' rights to depletion deductions against the gross proceeds received by them. By virtue of their 31 oil payment contracts, they acquired for a capital outlay such an economic interest in the oil as under *Palmer* v. *Bender*, 287 U. S. 551, and *Thomas* v. *Perkins*, 301 U. S. 655, entitles them to the statutory depletion allowance. The respondent in his determinations has granted them this allowance and in his brief states, "if income is subject to depletion it cannot be classed as capital gain." There is merit in this statement, we think. Cf. *F. H. E. Oil Co.*, 41 B. T. A. 130.

In his determination of the deficiencies in these proceedings, respondent has included the entire amount received under the various contracts in gross income and has allowed, as deductions against such gross income, cost or percentage depletion, whichever is the greater. This is the same method that we directed should be used as to receipts from the Fox lease oil payment contract involved in *F. H. E. Oil Co.*, *supra*. Depletion is a deduction from gross income. The latter term includes "gains" from the sales of property and also "income * * * growing out of the ownership or use of or interest in * * * property." See sections 22 (a) and 23 (m) of the Revenue Acts of 1934 and 1936. The amount of the "gain" from the sale of property is determined under section 111 (a) of the Revenue Acts of 1934 and 1936 and "shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) * * *." Congress certainly did not intend to reduce the "amount realized" on a sale by the "adjusted basis" and then, on top of that, allow the taxpayer a deduction for depletion. Cf. *Columbia Oil & Gas Co.*, 41 B. T. A. 38. So, if it is clearly established, as it has been in these proceedings, that petitioners are entitled to deductions for depletion, then it is our opinion that the proceeds received by petitioners must be classed as "income * * * growing out of the ownership or use of or interest in * * * property" rather than "gains" from the sales of property.

The Circuit Court of Appeals for the Fifth Circuit, in the case of *Dearing* v. *Commissioner* (1939), 102 Fed. (2d) 91, affirming *Willis R. Dearing*, 36 B. T. A. 843, held that an oil well driller who was paid for his services by an assignment of an interest in the oil in place, until he received the amounts of the payments in the contracts, obtains an economic interest in the oil in place and can not deduct the costs of drilling from the payments received by him under his

drilling contracts, but he must recover his costs through depletion deductions. The court said the production of oil under the contract is not a sale of the partnership interest in the oil in place, but is an enjoyment of that interest. Its interest in the oil reserve, like the fee owner's, is not thereby sold, but only depleted. Neither of them can deduct cost in dealing with the income so received, but each may reduce his income by depletion. The statute, of course, provides that a taxpayer who is entitled to deduct depletion may either deduct percentage depletion or depletion based on cost, whichever is the greater.

Counsel for petitioners cite *Carroll* v. *Commissioner*, 70 Fed. (2d) 806, and *William E. Boeing*, 37 B. T. A. 178, and in their briefs say, "We think it unquestionable that under the rulings in these cases, the money received by the Pettits under their contracts is taxable under the capital gains provisions of the Revenue Acts of 1934 and 1936." The *Carroll* case held that, where a partnership engaged in the manufacture and sale of lumber at wholesale was the owner of extensive tracts of standing timber and sold a part of the timber to another company under an agreement that the purchaser cut and pay for the same as cut, such timber, having been held by the taxpayer for more than two years prior to sale, was a capital asset and the gain thereon was a capital gain, under the capital gains provisions of the applicable statutes. We do not think this case throws any particular light on the questions involved in the instant proceedings, as the law relating to timber is quite different from that relating to oil and gas. The *Boeing* case is also a timber case and was reversed by the Circuit Court of Appeals for the Ninth Circuit at 106 Fed. (2d) 305; certiorari denied, December 11, 1939.

It is our opinion that the instant proceedings are controlled by *Burnet* v. *Harmel*, *supra*, as we can not say that the proceeds received by petitioners are any more to be taxed as capital gains than were the bonus payments which were involved in that case. The respondent's determination on this issue is sustained.

*Decisions will be entered under Rule 50.*