CONTINENTAL OIL COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82896.   Promulgated October 21, 1937.

*Wright Matthews, Esq.; Hilary D. Mahin, Esq.,* and *Glenn Y. Davidson, C. P. A.,* for the petitioner.

*Edward Tonges, Esq.,* and *F. M. Thompson, Esq.,* for the respondent.

OPINION.

HILL: The petitioner seeks redetermination of a deficiency of $137.07 in income tax for the fiscal year ended August 31, 1933. Petitioner alleges that the respondent erroneously disallowed it depletion on the sum of $4,334 it received during the taxable year from a lease of sulphur lands which it owned in fee.

The facts have been stipulated as follows:

I.

Attached hereto, made a part hereof and marked Exhibit "A", is copy of the notice of deficiency appealed from.

II.

Attached hereto, made a part hereof and marked Exhibit "B", is a copy of the contract between the Continental Oil Company, Petitioner, and the Texas Gulf Sulphur Company and Gulf Production Company.

III.

The Continental Oil Company was paid the sum of $4,334.00 under the above contract on July 29, 1933. During the year, development was not commenced on the property described in the above contract, nor was there any development in progress at the beginning of the year. On its income tax return for the taxable year 1933, the petitioner claimed as depletion a deduction of 27½% on said sum of $4,334.00. In the notice of deficiency mailed by the respondent, this depletion was disallowed.

The material parts of the contract between the petitioner and its lessees, the Texas Gulf Sulphur Co. and Gulf Production Co., are as follows:

Continental is the owner of the fee simple title, subject to the mineral leases hereinafter described, to an undivided $\frac{7}{16}$ interest in the minerals in the tract of approximately 729.7 acres of land known as the Sergent tract, located in the Jas. P. McFaddin League, in Liberty County, Texas, and described as follows, to-wit: [Here follows description of property.]

\* \* \* \* \* \* \*

The interest of Continental in the oil, gas, sulphur, and other minerals in said tract of land is now covered by the following two mineral leases, to-wit:

(a) The lease executed by Mrs. Ruth W. Sergent, joined by her husband, Paul O. Sergent, as lessors, to A. R. Miller, as lessee, recorded in Vol. 134, page 17 et seq., of the deed records of Liberty County, Texas, covering the South half of said tract of 729.7 acres, reference being here had to said original lease and the record thereof for a more complete description of the land covered thereby, and for the terms and provisions thereof.

(b) The lease executed by Mrs. Ruth W. Sergent, joined by her husband, Paul O. Sergent, as lessors, to Erwin W. Smith, as lessee, dated July 27, 1925, and recorded in Vol. 128, page 570, of the Deed Records of Liberty County, Texas, reference being here had to said record of said lease for the terms and provisions thereof. Said lease originally covered the entire 729.7 acre tract, but at present covers only the North half of said tract.

Gulf has assigned and conveyed to Texas Gulf all sulphur, sulphur rights, and all privileges properly incident thereto which were granted to the lessee by the first lease described above in so far as said lease covers the south half of the south half of the said Sergent tract, and Texas Gulf has acquired from others the leasehold sulphur rights granted to the lessees in both of said leases above described in so far as said leases cover the balance of the said Sergent tract.

## II.

Continental agrees to extend and does hereby extend both of the mineral leases above described from year to year without operations or production, except as may be necessary to comply with the obligation hereafter stated to protect against drainage, for a period of five years from date hereof for the following considerations to be paid Continental by Texas Gulf annually in advance, to-wit: For the first year, $5334.00; for each of the next four years, $4334.00.

No credit with right of reimbursement out of production will be taken for the payment made for the first year's extension; thereafter, all base fee sulphur royalties due Continental under the terms of the mineral leases hereinabove described, because of sulphur production on said tract each year, may be applied by Texas Gulf as far as necessary to reimburse Texas Gulf for the advance extension payment made for that year to Continental. If production of sulphur starts during the five year period on said tract of land, Texas Gulf, subject to the right of surrender hereinafter expressed, agrees to pay to Continental as a guaranteed base fee sulphur royalty, annually in advance, for the balance of the five year period, a minimum of $4334.00 per year, such payment to have effect of extending and maintaining all of the leases covering said tract in full force and effect, in so far as the fee interest of Continental is concerned, for the year for which the payment is made, regardless of the amount of production, and regardless of whether or not production stops entirely, and said payment shall have the effect of discharging all of the obligations to Continental imposed by the leases covering said tract for the year for which said payment is made, except as to drainage and the payment of any excess base fee sulphur royalties due from production over and above said payments of guaranteed base fee royalties. It is agreed that no guaranteed base fee sulphur royalty payment shall be due for any year for which an advance extension payment is made. Texas Gulf shall have the right to apply so much of the base fee sulphur royalties due to Continental under the terms of the mineral leases hereinabove described on account of

sulphur produced from said tract each year as may be necessary to reimburse itself for the advance guaranteed base fee royalties paid for that year to Continental, settlement for any balance to be made monthly as the sulphur is produced, but royalties accruing during one year may not be applied to so reimburse Texas Gulf for guaranteed base fee sulphur royalty payments made for any other year.

It is stated in the stipulation that the petitioner claimed 27½ percent of its gross income as depletion. Clearly this was erroneous as depletion allowable on sulphur-bearing property is governed by section 114 (b) (4), Revenue Act of 1932, as follows: "The allowance for depletion shall be, in the case of coal mines, 5 per centum, in the case of metal mines, 15 per centum, and, in the case of sulphur mines or deposits, 23 per centum, of the gross income from the property. during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property."

It is the contention of the respondent that the $4,334 paid by the lessees to the petitioner was nothing more nor less than delay rentals and under *J. T. Sneed, Jr.*, 33 B. T. A. 478, and *Commissioner v. Wilson*, 76 Fed. (2d) 766, depletion is not allowable on delay rentals. The petitioner on the other hand claims that the payment was in the nature of a bonus or advance royalty and is depletable under *Murphy Oil Co. v. Burnet*, 287 U. S. 299; *Herring v. Commissioner*, 293 U. S. 322; and *Burnet v. Harmel*, 287 U. S. 103.

In *Commissioner v. Wilson, supra*, the court defined delay rentals as follows:

The "delay rentals" on oil and gas leases are rents within the rule just announced. They accrue by the mere lapse of time like any other rent. They do not depend on the finding or production of oil or gas and do not exhaust the substance of the land. While having some likeness to a bonus payment which is held to be advance royalty, *Murphy Oil Co. v. Burnet*, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. 318; *Burnet, Commissioner*, v. *Harmel*, 287 U. S. 103, 53 S. Ct. 74, 77 L. Ed. 199, the delay rental is not paid directly or indirectly for oil to be produced, but is for additional time in which to utilize the land. We hold it to be rent. *Caruthers v. Leonard (Tex. Com. App.)* 254 S. W. 779, 783; *Sneed v. Commissioner*, 30 B. T. A. 1121.

On the other hand, royalties, including bonus, are not paid for time but for oil and gas taken out, and represent an actual removal and disposition of the contents of the soil. * * *

The terms of the contract are not shown in the report of the case.

In the case of *J. T. Sneed, Jr., supra*, this Board held that a plain delay rental was not depletable. There the delay rental was provided for as follows:

The so-called "delay rental" is the amount received in connection with the execution of an oil and gas lease of which Exhibit No. 4 in evidence herein is a typical example. This document is called an "oil and gas lease" and provides that for and in consideration of the sum of $9,600 (which the parties

denominate a "Bonus") and of the covenants and agreements thereinafter contained, certain property is granted, leased, and let unto a lessee for the sole and only purpose of mining and operating for oil and gas. The lease is to remain in force for a term of ten years and as long thereafter as oil or gas is produced. The lessee agrees to deliver to the lessor one-eighth part of all oil produced and saved; to pay the lessor one-eighth of the net proceeds from the sale of gas; to permit the lessor to have gas free of cost for all stoves and inside lights in the principal dwelling and to pay the lessor one-eighth of the net proceeds from the sale of gas used, including casing-head gas at the wells. It does not require a well to be drilled, but contains the following clause:

> If no well be commenced on said land on or before the 26th day of May, 1927 (one year after its execution) this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor, * * * the sum of $160 ($1 per acre), which shall operate as a rental and *cover the privilege of deferring the commencement of a well for twelve months from said date.* In like manner and upon like payment or tender the commencement of a well *may be further deferred for like periods* of the same number of months successively. [Italics supplied.]

The contract dated August 1, 1932, recites that "Continental agrees to extend and does hereby extend both of the mineral leases above described from year to year without operations or production, except as may be necessary to comply with the obligation hereafter stated to protect against drainage, for a period of five years from date hereof for the following considerations to be paid Continental by Texas Gulf annually in advance, to-wit:

"For the first year, $5,334; for each year of the next four years, $4,334."

The contract further provided that the payment of $5,334 for the first year's extension was not reimbursable to the lessee out of base fee royalties from production of sulphur under the lease. Each of the other payments was reimbursable provided there were accrued royalties within the year of payment out of which to make such reimbursement, but the payment for one year's extension was not reimbursable out of royalties on production in another year. The leases were extended only one year at a time upon the payment (after the first year) of $4,334. The amount of $4,334 paid July 29, 1933, for extension of the leases for the year beginning August 1, 1933, was not reimbursable for the reason that in that year there was no production and hence no royalties out of which to make such reimbursement. Up to the end of that year there had been no development of the property.

This payment was not a bonus in the nature of advance royalty. The extension of the leases in consequence of this payment terminated July 31, 1934, with no development of the property, no production of mineral and no accrual of royalties. This payment ful-

filled its whole function in extending the lease for one year and so far as the consequence of such payment was concerned the lease itself expired at the end of such extension.

· The cases relied on by the petitioner are distinguishable on the facts from this case. In those cases the payments held by the court to be bonuses in the nature of advance royalties, and hence depletable, were not made on the basis of annual or other periodic extensions of the lease as was the situation here. In *Herring* v. *Commissioner*, *supra*, the Supreme Court held that the taxpayers were entitled to depletion allowance on a bonus received during the taxable year in which they executed an oil and gas lease, though there was no production when the lease was made or until four years thereafter and at the time the lease was executed there was no oil well within three and one-half miles of the land. However, at the end of the opinion the Court said:

> As to income tax liability in the year of termination of the lease, on account of bonus paid at the execution of the lease, if no mineral has then been extracted, we express no opinion.

It is true that in the instant case the lessee had the right under the contract to an extension of the leases successively one year at a time for the next three years upon payment in advance of the sum of $4,334 for each year's extension; but each extension depended upon such payment, was for a definite annual period, and terminated at the end of such period.

A further indication that the extension payment in question was not intended as advance royalty lies in the fact that minimum advance royalties, as distinguished from payments for extension of the leases, were specifically required under certain conditions which did not obtain in connection with the extension payment in question. The only condition under which an extension payment might be converted into advance royalty was the commencement of production within the year for which the extension payment was made. The contract provided that if and when the property should be brought into production within the five-year period provided in the contract, the lessee agreed to pay "as a guaranteed base fee sulphur royalty, annually in advance, for the balance of the five year period, a minimum of $4,334 per year." Such payment was to be made in lieu of the "advance extension payment" and was to operate to extend the leases for the year for which made. The payment of the guaranteed base fee sulphur royalty and the advance extension payment were mutually exclusive, only one and not both being required to be paid. In other words, after the property should be brought into production the advance extension payments ceased and the guaranteed base fee sulphur royalty payments began.

It appears to us that the parties to the contract plainly indicated therein their intention that the advance yearly payments for the annual extensions of the leases should not be considered as payments for mineral until production began and that the payment in question here was made for rental "without operations or production" merely to hold the property until the lessees should bring it into production. We hold that it was delay rental and was not royalty on production of mineral or a bonus in the nature of royalty. Petitioner is, therefore, not entitled to depletion allowance thereon.

*Judgment will be entered for the respondent.*